# IN THE MATTER OF THE GUARDIANSHIP OF MAUD K. CROWELL, LATE A MINOR.

## No. 1455.

### APPEAL FROM CIRCUIT JUDGE FIRST CIRCUIT. HON. J. R. DESHA, JUDGE.

ARGUED JUNE 12, 1923.                    DECIDED SEPTEMBER 14, 1923.

### PETERS, C. J., PERRY AND LINDSAY, JJ.

GUARDIAN AND WARD—*custody and care of ward's estate—attorney's fees.*

While a guardian may bring suits on behalf of his ward and when suing in good faith and upon reasonable grounds is entitled to his legal expenses incident thereto, including a reasonable attorney's fee, it must appear that the institution of the suit and the incurment of such expenses were reasonably necessary. Where it does not appear that suit was necessary and it is apparent that the relief sought might have been obtained upon mere demand and no demand was made, an attorney's fee should not be allowed the guardian out of the estate of the ward.

SAME—*same.*

Where expenditures made by the guardian neither appear to be reasonable nor for the benefit of the ward or her estate the amount thereof is not chargeable against the ward.

SAME—*same—attorney's fee.*

Where it appears that a charge against a ward of an attorney's fee was for services rendered to persons other than the ward for a service which such others might have been legally required to perform and to which the ward was entitled without cost to her, the amount thereof was properly disallowed and surcharged against the guardian.

Opinion of the Court.

SAME—*same—same.*

> Where no abuse of discretion appears in the amount of an attorney's fee allowed a guardian the same will not be disturbed upon appeal.

SAME—*same—same.*

> The statutory commissions allowed a guardian cover the services of the guardian in collecting rentals due his ward, and in the absence of evidence disclosing any necessity for the employment of an attorney for such collection, attorney's fees cannot be allowed therefor.

SAME—*same—commissions.*

> Where it appears that a guardian has been flagrantly derelict in the performance of his duties as such, statutory commissions payable to the guardian are properly disallowed.

OPINION OF THE COURT BY PETERS, C. J.
(Perry, J., dissenting in part.)

This is an appeal by the former guardian of Maud K. Crowell, while a minor, from the decree of the judge of the division of domestic relations of the first judicial circuit settling the final accounts of the guardian and ordering him to forthwith pay to his former ward the sum of $1266.24, the amount found by the court to be in his hands and payable and distributable to her. This amount is made up of surcharges against the guardian, a review of the propriety of which requires first a brief statement of the history of the guardianship proceedings and certain ancillary proceedings taken by the guardian in connection therewith.

The appellant was appointed the guardian of the estate of the minor upon his own application on October 2, 1911. The petition for appointment bears an indorsement in the handwriting of the applicant over what purports to be the signature of the ward, and subscribed and sworn to by her before the clerk of the supreme court, to the effect that the ward was of the age of sixteen years, six months and twenty-six days and agreed and consented to and approved the said petition. According to the peti-

tion the only property of which the minor was seized and/or possessed was an undivided "one-third interest in a piece of land on the Waikiki side of Adams Lane, and more particularly described in L. C. Award Number 56 to Eliab Grimes: subject nevertheless to a deed given by said minor to Annie Mattos and C. Lai Young, dated December 9th, 1909, and recorded in Liber 326 Pages 118-119." In the order appointing the guardian there is a finding of fact that the minor was of the age of sixteen years, six months and twenty-six days.

On the day of the guardian's appointment it appeared of record in the office of the registrar of conveyances of the Territory of Hawaii at Honolulu, that the ward had theretofore and on to wit December 9, 1909, executed a deed to Annie Mattos and C. Lai Young (her husband joining therein in token of his consent thereto) of her undivided one-third interest in the Adams Lane property for the alleged consideration of $300 and that on May 10, 1911, C. Lai Young, one of the grantees named in said deed, by way of further security of a subsisting mortgage from himself to one Mendonca and in consideration of forbearance by the mortgagee conveyed an undivided one-sixth interest in and to the said premises subject to said deed to one Lyle A. Dickey, Esq.

On the day after his appointment, to be exact, on October 3, 1911, the guardian instituted in the circuit court of the first circuit against the said C. Lai Young and the said Annie Mattos a suit in equity to cancel the said deed to them of December 9, 1909, and for a reconveyance by them of the premises subject thereto to his ward, alleging in his bill that the said C. Lai Young and said Annie Mattos had obtained the said deed from said ward by force and by false and fraudulent representations and by undue influence for the inadequate sum of $300. In connection with the formal allegation of the represent-

ative capacity of the complainant the guardian alleged that the ward was at the time of his appointment as guardian about sixteen years of age. On October 13, 1911, the respondent C. Lai Young filed his sworn answer wherein he denied the allegations of fraud; alleged "That at the time of said conveyance this defendant believed that although Maud K. Crowell was a minor, being under age, the fact that she was a married woman not only put an end to the guardianship of her adopted mother but gave her power with the consent of her husband, to make a valid deed, and this conveyance was accepted in good faith. That since a recent decision of the supreme court on the effect of marriage on an infant woman, this defendant admits that said deed is voidable and that said Maud K. Crowell has a right to a reconveyance of said property;" and consented to make the conveyance prayed for, urging, however, that in equity he should be reimbursed in the sum of $167.60 expended by him in the year 1908 for the benefit of the minor in defending a lawsuit brought against her in which her title to the said land subject to said deed of December 9, 1909, had been put in question. The lawsuit referred to was the case of Gustave Rose and Helen Kruger v. Rosina Rose, Bertha Rumbel and Maud Kaikilani Chapman, a minor, an action to quiet title, Law No. 6684, lately pending in the circuit court of the first circuit. Chapman was the ward's maiden name. Annie Mattos made no answer to the bill of complaint.

On October 14, 1911, the respondents Annie Mattos and C. Lai Young, by their deed in writing, released, quit-claimed and conveyed unto the ward for the alleged consideration of $150 all their right, title and interest in and to the premises so theretofore conveyed to them by said deed of December 9, 1909. This deed was drafted by the guardian. The accounts contain no charge against the ward for this alleged consideration. On December 28,

1911, Lyle A. Dickey, the mortgagee in said mortgage to him of May 10, 1911, for the alleged consideration of $167.60 released and quitclaimed unto the ward all the right, title, interest and estate acquired by him in and to said premises by said mortgage.   The similarity in the consideration in this release of mortgage and the amount claimed by C. Lai Young by his answer in the equity proceedings would seem to indicate that they refer to the same subject-matter.   On October 17, 1911, plaintiff discontinued the equity suit.

On October 19, 1911, the guardian presented to the circuit judge in probate in the matter of the estate of said ward a petition for leave to sell the said one-third interest of his ward in the said Adams Lane premises, alleging as reasons and grounds therefor "that there is no income so far as the minor is concerned from said property in order to maintain said minor," and "that in order to protect the interest of the minor in the above entitled described property the guardian is liable to pay to Lyle A. Dickey or C. Lai Young who had advanced money to pay such expenses amounting to about One Hundred and Sixty-seven and 60/100 ($167.60) Dollars, and that it is necessary that the above mentioned property be sold for the benefit of said minor."   Upon proceedings had before the probate judge the interest of the minor in said property was sold for $2950 from which the guardian was directed in the order confirming the sale "to pay and discharge out of said proceeds of sale the delinquent and unpaid taxes on the one-third interest of said minor in said premises, and the sum of $167.60 to L. A. Dickey in discharge of his lien thereon."   The order confirming sale was filed December 23, 1911, and the release of mortgage would indicate that the order to reimburse Lyle A. Dickey was complied with thereby.   After the interest of the minor in the Adams Lane premises was revested in her

the guardian collected from former occupants of the premises as rent therefor the sum of $157.15 paid partly in cash and partly by giving credit for the amount paid by such occupants to the government on account of commutation due it from the minor upon said property.

No accounts were filed by the guardian other than his final account which bears the file mark of January 4, 1922. This was filed only upon the previous demand of the attorney general acting on behalf of the minor who was then a ward of the government as a leper at Molokai. Previously, in the year 1917, at the instance of W. T. Rawlins, Esq., an attorney of this court, an accounting was privately rendered by the guardian and the balance then due the ward as claimed by him was paid over to her but this account was never accepted either by the ward or her attorney as correct. On the contrary, exception was taken thereto and further accounting demanded culminating on June 6, 1919, in a written demand of the guardian that he forthwith file his final accounts in court, in default of which action would be taken to compel compliance thereto. This demand, however, was entirely ignored and no accounts were filed until the attorney general acted as previously stated. In justice to Mr. Rawlins, it might be noted that he had in the meantime gone abroad and had also been in Washington upon territorial business and being unable to further pursue the matter had withdrawn as the ward's attorney.

For his services in the equity suit against Mattos and Lai Young the guardian charged the ward in his account with the sum of $776.15. He also charged the ward the sum of $10 for drafting the deed of reconveyance to her by Mattos and Lai Young. The ward was also charged with the sum of $167.60, the consideration for the release of the Dickey mortgage. For the collection of the rents he charged the ward ten per cent. of the amount collected

and for services rendered in filing his final account he charged the ward $50. All these items were disallowed by the court and the guardian surcharged therewith. Further, due to the actions of the guardian and his dereliction in his duties as such, the court refused to allow him any commissions and charged him with the amounts thereof, credit for which he had prayed in his accounts. It is of these surcharges and the refusal of the court to allow the guardian any commissions that the guardian complains and to the review of which this appeal is directed.

Why the guardian brought an action to set aside the deed to Mattos and Lai Young on the ground of fraud and undue influence instead of taking the necessary steps to avoid the deed on the ground of infancy is not disclosed further than by the explanation of the guardian that his ward was a large girl, was married at the time and had had a child and that he feared he would be unable to prove minority. We are not impressed with this explanation. The ward's mother was alive at the time. In an action to set aside a deed on the ground of fraud innocent subsequent grantees and mortgagees for value are protected. Not so upon avoidance by a minor of a deed executed by him during infancy. This situation would naturally influence a guardian in determining what course to pursue. The suit as filed was ill-advised. Moreover, it appears from the evidence of Mr. Rawlins that the guardian could probably have procured a reconveyance of the premises by Mattos and Lai Young upon notice of avoidance and request therefor and that legal proceedings were unnecessary. The guardian admitted that he secured his appointment primarily to recover the property for his ward for which in the event of success, by arrangement with the ward and her mother, he was to receive one-third of the value of the land. The guardian is an attor-

ney at law of this court. He knew that his ward was incompetent to enter into a contract of employment of this character. He knew that his remuneration for services rendered was subject to the supervisory control of the courts. Personal interest and not the interests of his ward apparently actuated the institution of the equity suit. If Mr. Rawlins is correct, and the record certainly confirms his opinion, the guardian could have accomplished all that he did accomplish upon mere demand. Nor do we believe that the charge is made in good faith. When the guardian privately accounted to Mr. Rawlins he made a charge for this service of $295. Neither the ward nor her mother was called as a witness to corroborate his claim that a previous arrangement had been made as to the remuneration that he should receive. He denied the keeping of any books of account either personally or for his ward. He admitted that the receipt which he executed to himself for the sum of $776.15 for services rendered in this matter was made out by him shortly before filing his final accounts. The facts speak for themselves. No evidence was adduced by the guardian as to the value of his services. Mr. Rawlins testified that they were not worth anything. Had Mattos and Lai Young upon demand therefor refused to reconvey the desirability of offering the property for sale without any legal entanglements might constitute some justification for the suit. But without any prior demand for reconveyance, which, from the answer of Lai Young it must appear the latter was willing and ready to execute, the guardian precipitated this litigation actuated without question by the unconscionable contract for services which he had previously exacted from his ward and not by the interests of his ward. While a guardian may bring suits on behalf of his ward and when suing in good faith and upon reasonable grounds is entitled to his legal

expenses incident thereto, including a reasonable attor-. ney's fee, it must appear that the institution of the suit and the incurment of such expenses were reasonably necessary. Where it does not appear that suit was necessary and it is apparent that the relief sought might have been obtained upon mere demand, and no demand was made, an attorney's fee should not be allowed the guardian out of the estate of the ward.

The attorney general filed written objections to the guardian's account assigning to this particular item the objection "that it does not appear that this minor is liable for the whole of said sum." In his written answer to the objection of the attorney general the guardian asserted: "4. Item No. 12. Dec. 22, 1911. To Bill of L. A. Lindsay (Dickey) Voucher No. 12, $162.50. The guardian had examined the claim of L. A. Dickey and was satisfied that that amount was a reasonable charge on account of the share of the minor in a land suit before." The master to whom the accounts were referred made the following report on this item: "Item No. 12. December 22, 1911. This is for the sum of One Hundred Sixty-seven Dollars and Sixty Cents ($167.60) representing a sum of money paid by the guardian to Lyle A. Dickie" (Dickey). "One Hundred Dollars ($100.00) of this sum is represented as advances for fees, and the Sixty-seven Dollars and Sixty Cents ($67.60) is represented as costs paid on behalf of the ward by C. Lai Young and Lyle A. Dickie" (Dickey). "There is nothing in the record which shows the necessity of paying this sum, and the master recommends *that until such time as it can be shown that the expenditure was necessary for the benefit of the ward,*" (the italics are ours) "that the item be disallowed." Upon the hearing this item was in issue. Evidence was adduced by the guardian in support thereof.

The trial court in its discretion refused to be bound

by the decretal order of the probate judge, in the matter of the proceedings for the sale of the ward's estate, ordering payment of this amount to Mr. Dickey and investigated the propriety of the payment anew. This it had a right to do. The decretal order of the probate judge was not final. The guardian was the only party before the court at that time. The minor in that proceeding was represented by the guardian. The order of payment was subject to modification or annulment by the judge of the division of domestic relations sitting as a judge in probate upon hearing of the guardian's final accounts. *Estate of D. H. Davis*, 22 Haw. 436.

Neither party to the proceedings below objected to the court going into the propriety of this charge and no point is made here that the trial judge abused his discretion in so doing.

Upon this state of the case the question presented to this court is simply whether the record supports the decision of the trial court surcharging the guardian with the amount of this payment to Mr. Dickey.

From an examination of the record in Law No. 6684 it appears that the plaintiffs claimed the entirety in fee; that Mr. Dickey appeared in behalf of the ward by her adopted mother, Annie Mattos, and filed an answer on behalf of the ward claiming an undivided one-half interest in the premises subject thereto and upon trial had, the ward prevailed and judgment was rendered in her behalf adjudging her to be the owner in fee simple of an undivided one-third interest in the premises. Plaintiffs' costs were taxed in the sum of $67.60 and in the judgment these costs were not charged against the minor but against the other defendants. Mr. Dickey's voucher is for $167.70 and recites that it is "for fees and costs advanced re suit Mrs. Kruger et al. vs. Maud K. Crowell et al." Obviously the receipt affords no means of determining what part

thereof was charged by Mr. Dickey for counsel fees and what part for costs advanced. No attempt was made by the guardian or any witness on his behalf to segregate the total amount of $167.70 and the record is entirely silent upon the question of what amount thereof should be applied to "fees" and what to "costs."

Fortunately the record in Law No. 6684 may be resorted to to determine the value of Mr. Dickey's services as attorney for the ward therein. An examination of that record satisfies us that Mr. Dickey's services were reasonably worth the sum of $100. But neither the record in the action to quiet title nor the record in the instant case furnishes any clue of the purposes of the alleged advance for costs or the reasonableness thereof unless it be in satisfaction in part of plaintiffs' costs taxed in the law action. This leaves the sum of $67.70 unexplained. From all that appears in the record it is impossible to say that the costs were chargeable against the ward or her estate or were reasonable. It should affirmatively appear that the expenditure for costs was for the benefit of the ward or her estate. Where as here the propriety of the charge is put directly in issue and its allowance is denied "until such time as it can be shown that the expenditure was necessary for the benefit of the ward" the mere production of a receipt is not sufficient. Nor was the mere assertion of the guardian that were Mr. Dickey present he could explain the matter a substitute for competent evidence in support thereof. Moreover, the duty devolved upon the guardian to show affirmatively that the amount of these expenses was reasonable. "The guardian may employ counsel and pay counsel fees and expenses of litigation in prosecuting or defending a suit in behalf of the ward; and, while he becomes personally liable for such fees and expenses, if they are reasonable in amount and such as would have been incurred by one of ordinary prudence in

the management of his own affairs, the guardian will be
entitled to an allowance therefor in his account * * *."
28 C. J., title "Guardian and Ward," Sec. 259, p. 1151.
See also *Van Gieson* v. *Magoon*, 20 Haw. 146. It is sig-
nificant, however, that the amount described in the peti-
tion of the guardian for leave to sell real estate "as
due Lyle A. Dickey or C. Lai Young," the amount ordered
to be paid Mr. Dickey by the order confirming the sale,
the consideration on the release of the mortgage by Mr.
Dickey and the amount for which the guardian prayed
allowance in his accounts is in each instance the sum of
$167.60 while the receipt from Mr. Dickey is but ten cents
in excess thereof. Whether Mr. Dickey's receipt refers to
the same amount and the additional ten cents is a mistake
we cannot say. If this amount were intended to cover the
whole or any part of the costs taxed in favor of plaintiffs
in the action to quiet title the ward certainly could not
be charged therewith.

Under the circumstances the surcharge of $167.60 to
the extent of $67.60 thereof, on the theory that it is refer-
able to costs, is affirmed; to the extent of $100, which we
find is referable to counsel fees for services rendered by
Mr. Dickey in the law action referred to, it is reversed.

The charge of $10 for drafting the deed from Mattos
and C. Lai Young to the ward is another instance of the
unnecessary incurment of counsel fees. C. Lai Young in
his answer in the equity proceeding expressed his willing-
ness to and offered to convey. The respondent Mattos
had defaulted. If the guardian were acting bona fidedly
when he verified the bill in equity charging the respond-
ents with fraud and undue influence he knew that he
was entitled to a decree for reconveyance which the re-
spondents would have been obligated to make without cost
to the ward. In the face of the facts and the pleadings
the ward was entitled to a reconveyance without any cost

whatever.  The guardian even failed to secure from the respondents the costs accrued against the ward up to discontinuance.  This matter, however, does not come within the purview of this appeal and we make no comment thereon further than to say that it is an additional reason for our feeling that under all the circumstances the disallowance of this item by the lower court was proper.

The guardian charged the ward $200 for his services in securing the sale of the property.  The court below allowed him $50 and surcharged him with the balance.  No abuse of discretion appears and the action of the trial court in that regard is approved.

Services for the collection of rents due the ward are under ordinary circumstances covered by the statutory commissions allowed by law.  No suit was filed therefor.  No complications arose necessitating the services of an attorney and in the absence of any showing of such necessity an attorney's fee for such services was properly disallowed.

Nor does the record disclose any reason why the guardian should be paid an attorney's fee for the preparation of his final accounts.  The action of the trial court is sustained without comment.

The trial court also disallowed the guardian's statutory commissions.  The judge in his decision found: "The conduct of the guardian in this matter is deserving of censure by this court.  The guardian was not only negligent in that he failed to file an accounting upon the ward attaining her majority, but he was also negligent in the performance of his duties.  The interests of his ward were of secondary importance to his own interest.  He profited from the assets out of all proportion to his services.  Where he should have attempted to conserve and invest the assets, he on the other hand proceeded to squander and dissipate his ward's property.  This court is con-

strained to condemn the guardian in the management of the property entrusted to his keeping." These findings are amply sustained by the evidence. Commissions to the guardian were properly disallowed.

The decree appealed from is affirmed, except as to the surcharge of $167.60 which is reduced by $100. The cause is remanded to the judge of the division of domestic relations with instructions to modify the decree appealed from by substituting the sum of $1166.24 for the sum of $1266.24 wherever the latter amount appears therein.

*W. C. Achi,* Guardian (also on the brief), in person.

*H. R. Hewitt,* Deputy Attorney General (also on the brief), for the ward.

### OPINION OF PERRY, J., CONCURRING IN PART AND DISSENTING IN PART.

One of the items appearing in the schedule of disbursements in the guardian's account is as follows: "December 22, 1911, Bill L. A. Dickey (Voucher No. 12) $167.70." The voucher in support of this item reads: "Honolulu, December 28, 1911. Received from W. C. Achi, Gdn. Maud K. Crowell, One Hundred and Sixty-seven 70/100 Dollars for fees and costs advanced re suit Mrs. Kruger et al. vs. Maud K. Crowell et al. $167.70. (Signed) Lyle A. Dickey." In the probate cause entitled "In the Matter of the Estate of Maud K. Crowell, a Minor," a circuit judge of the first circuit, in an order confirming the sale by the guardian of the ward's one-third interest in certain real property situate in this city, specifically authorized Mr. Achi as guardian of the said minor "to pay and discharge out of said proceeds of sale * * * the sum of $167.60 to L. A. Dickey in discharge of his lien thereon."

Ordinarily this showing, inclusive of the decree of a court of competent jurisdiction specifically authorizing the disbursement, would suffice to require the allowance

Perry, J., dissenting in part.

of the item to the guardian in the settlement of his final accounts. It is in itself a strong showing that the payment was properly made on behalf of the ward. It is true, as a matter of law and of procedure, that in the consideration of the guardian's final accounts the propriety of the payment in question may be reexamined in spite of the existence of the former decree; but this is a power to be carefully exercised. The former decree should not be lightly set aside. It is entitled to the respect and weight due to any decree of a conscientious judge passing upon the matter after a hearing. I can find in the record before us in the case at bar nothing to justify the revocation or modification of the former decree. The guardian testified in effect that the payment was made by him only after an examination which satisfied him that the expenditure was for the benefit of his ward and that if Mr. Dickey were to prove the facts before the court the court would compel the guardian to pay the claim. The record in L. No. 6684, which was admitted in evidence in this case by the trial judge (although for an erroneously limited purpose), shows that an action at law to quiet title was brought under our statutes by Gustave Rose and Helene Kruger, as plaintiffs, against Rosina Rose, Bertha Rumbel and Maud Kaikilani Chapman, a minor (the ward in the case at bar), as defendants; that Mr. A. G. M. Robertson, later chief justice of this court and always a member of the bar in high standing, was in that cause the attorney for the plaintiffs; that in the declaration it was represented that Maud was a minor and prayer was made that a guardian *ad litem* be appointed to protect her interests; that the circuit court appointed William A. Chapman, alleged father of Maud, as her guardian *ad litem;* that subsequently, upon a showing by affidavit that William A. Chapman was the stepfather and not the father of Maud and showed no interest in her or in her property

rights, Annie Mattos, Maud's mother by adoption, was appointed guardian *ad litem* in place of the said Chapman; that on behalf of Maud an answer was filed by Annie Mattos as guardian *ad litem,* Mr. Lyle A. Dickey, later a judge of the circuit court of the fifth judicial circuit and always a member of the bar in high standing, signing and presenting the answer as attorney for the guardian *ad litem,* and that in that answer the minor set up a claim to ownership in fee simple of an undivided one-third of the land described in the plaintiffs' declaration; that an answer was also filed on behalf of each of the other defendants by competent counsel; that trial was had before the court without the intervention of a jury; that briefs were filed by the attorney for the guardian *ad litem,* by the attorney for Rosina Rose and by the attorney for the plaintiffs; that in that action Rosina Rose claimed the whole title to the premises in fee simple, the minor claimed an undivided one-third interest and the plaintiffs claimed an undivided two-thirds interest, the latter saying in their brief that it was of no concern to them who was the owner of the remaining one-third but nevertheless arguing to the effect that Maud was not the owner of that one-third; and that the decision and decree of the trial judge was that the minor was the owner of an undivided one-third interest in fee simple. Throughout the proceedings in that action at law there is not discernible any trace of collusion between the plaintiffs and any of the defendants nor is there any room for the thought that the action was not instituted in good faith in order to secure a determination of the rights of the parties or that Judge Dickey did not devote his undivided attention and efforts to securing for his client as favorable a judgment as possible. I am satisfied from the evidence furnished by that law record not only that Judge Dickey's services were rendered in the utmost good faith

but that they were for the benefit of the minor and that they were reasonably worth at least the amount of compensation which he received, which would seem to have been the sum of $100. I find no reason in the evidence now before us for believing that the expenditure of $67.60 for costs and expenses on behalf of his client was unnecessarily incurred by Judge Dickey.

I think that the whole of the item of $167.60 ought to be allowed to the guardian.

It is said that the guardian's charge of the sum of $10 as a "fee drawing deed from C. Lai Young" should be disallowed on the ground that the duty devolved upon C. Lai Young and Mattos to furnish the deed, this being a reconveyance of land improperly accepted by them from Maud while she was still a minor. Conceding that the duty to draw and furnish the deed rested primarily upon those who should reconvey, it seems to me, nevertheless, that it was an act of commendable industry and watchfulness on the part of the guardian to prepare the deed himself and secure its execution while C. Lai Young and Mattos were confessedly in the mood to make the reconveyance. Further judicial proceedings to compel the execution of a deed of reconveyance would have been at least as costly as the mere drawing of a deed and probably more costly and the delay involved in further proceedings not accompanied by the tender of a form of deed might reasonably have seemed to the guardian to have left the way open for the proposed grantors to change their attitude or to cause further delays resulting possibly in intervening deaths with their resultant complications. I think that no fault is attributable to the guardian for avoiding all unfavorable chances by immediately drawing the deed himself and presenting it for execution and that he is entitled to reasonable compensation for his legal services in drawing the deed.

The contract of the minor to pay Mr. Achi for his services in equity suit No. 1796 for the setting aside of the deed to C. Lai Young and Mattos was, of course, avoidable and has been avoided by the acts of the ward. The guardian cannot succeed in any claim to compensation under that contract. The institution of the suit in equity was perhaps unnecessary (it was one method of disaffirming the deed) and, in the light of subsequent events as they have developed, it might be that upon a mere demand a reconveyance would have been secured. The evidence is not clear as to whether the guardian made any efforts prior to the suit to secure a reconveyance but assuming that he did not and that he acted too hastily in instituting the suit and even that the institution of the suit was largely for the purpose of securing the large fees contemplated by the voidable contract just mentioned, it nevertheless remains true that the suit accomplished for the ward all that the ward was entitled to and all that could have been accomplished by a mere demand. If a demand had been made resulting in the execution of the deed prepared by the guardian, the services so rendered by the guardian would none the less be legal in their nature and such as to justify and require the allowance to him for those services of compensation additional to his statutory commissions and in that event the sum of $50 would clearly have been reasonable compensation for those services. While the amount claimed, to wit, $776.15, should be disallowed, the guardian should, in my opinion, be allowed in lieu thereof the sum of $50 for his services in preparing the deed and in securing a reconveyance.

Nor is there anything in the evidence of Mr. Rawlins to require a different conclusion. He did not attempt to testify that he had knowledge that a demand, without suit, would have been successful. His evidence was that *"in all probability* a demand upon Lai Young would have car-

ried out the same thing" and that "a demand upon Lai Young would *probably* have accomplished the same end." He simply gave his surmise based upon the facts as he knew them at the time of testifying. His statements in reality were not evidence and should not have been admitted.

I concur in the allowance to the guardian of the charge of $50 for securing the sale of the ward's property, in the disallowance of the compensation claimed for collection of rents and for the preparation of the final accounts and in the disallowance of all commissions.